Arnold D. Larson, Esq. (State Bar No.77118)
LARSON, GARRICK & LIGHTFOOT, LLP
801 S. Figueroa Street, Suite 1130
Los Angeles, California 90017
Tel: 213 / 404-4100 / Fax: 213 / 404-4123
alarson@lgl-law.com

Attorneys for Plaintiff, STARSTONE NATIONAL INSURANCE COMPANY, f/k/a TORUS NATIONAL INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARSTONE NATIONAL INSURANCE COMPANY,<br><br>    Plaintiffs,<br><br>v.<br><br>LONDON AVIATION UNDERWRITERS, JOHN R. HANSON, ESQUIRE; AND WORTHE HANSON & WORTHE, A LAW CORPORATION,<br><br>    Defendants. | Case No.:<br><br>**PLAINTIFF STARSTONE NATIONAL INSURANCE COMPANY'S COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff, STARSTONE NATIONAL INSURANCE COMPANY, by and through its attorneys, as and for its Complaint against Defendants LONDON AVIATION UNDERWRITERS; JOHN R. HANSON, ESQUIRE; AND WORTHE HANSON & WORTHE, A Law Corporation, alleges as follows:

### THE PARTIES

1.   Plaintiff, StarStone National Insurance Company ("StarStone"), is an insurance company (not an LLC) organized and existing under the laws of Delaware with a principal place of business at 201 E. Fifth Street, Cincinnati, Ohio 45202.  StarStone is a citizen of Delaware and Ohio.

2. Defendant, London Aviation Underwriters ("LAU"), is a company organized under the laws of Washington with a principal place of business in the State of Washington. LAU is a citizen of the State of Washington.

3. At all relevant times, LAU conducted business in the State of California and derived and continues to derive substantial revenue from the State of California.

4. Defendant, John R. Hanson, Esquire ("Hanson"), is an individual residing in the State of California and is a duly licensed attorney by the State of California conducting business as a partner and agent at Worthe Hanson & Worthe, A Law Corporation, located at 1851 East First Street, Suite 860, Santa Ana, CA 92705. Hanson is a citizen of California.

5. Defendant, Worthe Hanson & Worthe, A Law Corporation ("the Worthe Firm"), is a California corporation with its principal place of business located at 1851 East First Street, Suite 860, Santa Ana, CA 92705. The Worthe Firm is a citizen of the State of California.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter under 28 USC § 1332 in that it arises between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, insofar as the value of the right being protected and/or the injury being averred exceeds $75,000.

7. Venue is proper in this district under 28 U.S.C. § 1390 or § 1391 because a substantial part of the acts or omissions giving rise to the claim occurred in this district and the Defendants are subject to the Court's personal jurisdiction with respect to this action.

## NATURE OF THE ACTION

### A. The StarStone/LAU Contract

8. Torus US Services, Inc., as servicing agent to StarStone National Insurance Company (then known as Torus National Insurance Company), entered

into a Claims Services Agreement ("the Agreement") with LAU, dated February 2, 2015.[1] *See* a true and accurate copy of the Agreement attached as Exhibit "A".

9. Pursuant thereto, LAU agreed to administer certain claims and losses under policies issued by StarStone and perform additional certain related services, as described in the Agreement. Specifically, LAU agreed to "hold any monies received for, by or belonging to [StarStone] in a fiduciary capacity and … handle such funds strictly in accordance with the terms of this Agreement and instructions from [StarStone]." *See id*. at ¶ 6(h) (Claims Services).

10. Also, LAU agreed to "coordinate and cooperate fully with [StarStone] to insure that all claims are investigated, adjusted, settled and paid in a professional and timely manner." *See id*. at ¶ 6(l) (Claims Services).

11. Moreover, the Indemnification provision of the Agreement requires LAU to:

indemnify, defend, and hold harmless [StarStone], its parent, subsidiaries and affiliates and their respective directors, officers, employees and agents from and against any and all liabilities, claims, suits, actions, demands, settlements, losses, judgments, costs, damages, expenses (including reasonable attorneys' fees), fines, penalties, including punitive or exemplary damages and all costs of defense (collectively, "Losses") to the extent arising out of or resulting from: (i) any negligent or otherwise wrongful act or omission, whether intentional or unintentional, by [LAU] or its officers, directors, employees or sub-administrators, related to or arising out of the business covered by this Agreement;…

*See Id*. at ¶ 19 (Indemnification).

12. At all relevant times herein, the Agreement was in full force and effect.

   **B.**   <u>*Anselmi v. Estate of William Goldman, et al.*</u>

13. In accordance with the terms and conditions of an insurance policy issued by StarStone to DDLV, LLC, StarStone retained Hanson and the Worthe Firm to represent the interests of the Estate of William Goldman and DDLV, LLC, in the matter captioned *Valeria Anselmi v. Estate of William Goldman, et al.*,

---

[1] By Amendment Number 2 to the Agreement, the Agreement was assigned to StarStone.

Superior Court of California, San Mateo County, No. 18CIV03641 ("the *Anselmi* Action").

14. Pursuant to the terms and conditions of the Agreement, on behalf of StarStone, LAU administered the claims asserted against Estate of William Goldman and DDLV, LLC in the *Anselmi* Action.

15. Upon the settlement of the *Anselmi* Action, on or about November 17, 2021, LAU purported to wire $1,000,000 in StarStone funds to Anselmi's counsel, Donald Dowling, Esq. and/or his firm, Ross, Hackett, Dowling, Valencia & Walti, A Professional Corporation (collectively "Dowling"), using wiring instructions provided by Hanson and/or the Worthe Firm.

16. However, a third party(ies) compromised the email systems of Dowling and/or Hanson/the Worthe Firm and sent "spoofing" emails to Hanson purporting to be Dowling with erroneous banking information for the wire transfer of the settlement funds.

17. Despite having received several emails providing changes to the wiring instructions and/or providing a reasonable basis for them to question the authenticity of the sender and/or the wiring instructions, Hanson and the Worthe Firm did nothing to confirm the identity of the sender or the accuracy of the wiring instructions.

18. Instead, Hanson and the Worthe Firm provided the fraudulent wire instructions to LAU, who ultimately processed the transfer of funds to the third party's account.

19. Also, despite knowledge of errors with the wiring instructions and/or acquiring a reasonable basis to question the authenticity of the sender and/or the wiring instructions, and, in any event, contrary to the standard of care in making wire transfers, LAU did nothing to confirm either the identity of the sender of the emails to Hanson and/or the Worthe Firm or the accuracy of the wiring instructions before transferring the funds to the third party.

20. Neither Hanson, the Worthe Firm, nor LAU confirmed the accuracy of the wire instructions with Dowling.

21. The wired funds were unable to be recovered.

22. As a result, StarStone was forced to issue a second payment of $1,000,000 in settlement of the *Anselmi* Action.

23. StarStone issued a demand to LAU for reimbursement of the Settlement Payment, but LAU refused to reimburse StarStone.

24. StarStone issued a demand to Hanson and the Worthe Firm for reimbursement of the Settlement Payment, but they refused to reimburse StarStone.

## **FIRST CAUSE OF ACTION**
## **(Plaintiff v. LAU—Breach of Contract)**

25. Plaintiff repeats all of its previous allegations as though more fully set forth herein.

26. The Agreement requires LAU to "hold any monies received for, by or belonging to [StarStone] in a fiduciary capacity" and to "coordinate and cooperate fully with [StarStone] to insure that all claims are investigated, adjusted, settled and paid in a professional and timely manner." *See* Ex. A., ¶ 6(h), (l).

27. The Agreement also requires LAU to indemnify and hold harmless Plaintiff from and against any and all liabilities arising out of or resulting any negligent or otherwise wrongful act or omission by LAU. *See id.*, ¶ 19.

28. LAU materially breached the Agreement when it failed to confirm that the wiring instructions for the settlement payment in the *Anselmi* Action were accurate and allowed the settlement payment to be transferred to a third party.

29. LAU further materially breached the Agreement when it failed to indemnify Plaintiff for the additional $1,000,000 settlement payment, which arose out of and/or resulted from the negligent/wrongful acts and/or omissions of LAU, as described above.

30. Plaintiff has performed all of its obligations under the Agreement.

31. As a direct and proximate cause of LAU's material breach, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages together with an award of attorney fees, pre and post judgment interest and such other relief deemed appropriate by court or jury.

## SECOND CAUSE OF ACTION
## (Plaintiff v. LAU—Negligence)

32. Plaintiff repeats all of its previous allegations as though more fully set forth herein.

33. LAU owed Plaintiff a duty to exercise prudence, care, skill, diligence and reasonable professional judgment to protect Plaintiff's interests in the *Anselmi* Action.

34. LAU's conduct fell below the applicable standard of care, including but not limited to:

   (a) Failing to confirm that the wiring instructions for the settlement payment in the *Anselmi* Action were accurate;

   (b) Failing to stop the settlement payment in the *Anselmi* Action from being transferred to a third party;

   (c) Allowing the settlement payment in the *Anselmi* Action to be transferred to a third party;

   (d) Failing to indemnify Plaintiff for the additional $1,000,000 settlement payment; and

   (e) Any other act and/or omissions as revealed during the course of this action.

35. As a direct and proximate cause of these defendants' negligent acts and/or omissions, as alleged above, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages together with an award of attorney fees, pre and post judgment interest and such other relief deemed appropriate by court or jury.

### THIRD CAUSE OF ACTION

### (Plaintiff v. Hanson and The Worthe Firm—Professional Negligence)

36. Plaintiff repeats all of its previous allegations as though more fully set forth herein.

37. Hanson was, and now is, acting as the employee, agent, principal, officer, partner, director and/or in other representative capacity of the Worthe Firm and, in doing the things herein mentioned, was acting within the scope and course of such employment, agency, partnership, or other relationship, and with the permission, authorization, ratification and consent of the Worthe Firm.

38. Hanson and the Worthe Firm owed Plaintiff a duty to exercise prudence, care, skill, diligence and reasonable professional judgment to protect Plaintiff's interests in the *Anselmi* Action as would any similarly situated lawyer/law firm.

39. During the legal services provided by Hanson and the Worthe Firm to Plaintiff, their conduct fell below the applicable standard of care, as set forth herein. They failed to exercise reasonable care and skill when negligently and carelessly doing all the actions and omissions as herein alleged, including but not limited to:

(a) Failing to use reasonable security measures when using their computer systems in their communications with Dowling;

(b) Failing to observe industry standards in the protection of their email communications with Dowling;

(c) Failing to implement, maintain, and/or monitor their computer system, software, and/or servers to prevent "hacking", "spoofing", and/or other cyber-attacks, including that involved in the instant matter;

(d) Failing to recognize receipt of fraudulent emails purportedly from Dowling;

(e) Failing to adequately confirm that the wiring instructions for the settlement payment in the *Anselmi* Action were accurate;

(f) Failing to stop the settlement payment in the *Anselmi* Action from being transferred to a third party;

(g) Allowing the settlement payment in the *Anselmi* Action to be transferred to a third party;

(h) Any other act and/or omissions as revealed during the course of this action.

40. Had Hanson and/or the Worthe Firm exercised the skill, prudence and diligence commonly possessed by other legal professionals in the field, Plaintiff would not have been required to pay an additional $1,000,000 for the settlement of the *Anselmi* Action, which neither Hanson nor the Worthe Firm has reimbursed.

41. As a direct and proximate cause of these defendants' negligent acts and/or omissions, as alleged above, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages together with an award of attorney fees, pre and post judgment interest and such other relief deemed appropriate by court or jury.

Dated: October 31, 2022            LARSON, GARRICK & LIGHTFOOT, LLP


By: ____/s/ Arnold D. Larson_____
ARNOLD D. LARSON
Attorneys for Plaintiff,
STARSTONE NATIONAL INSURANCE COMPANY

## **DEMAND FOR JURY TRIAL**

Plaintiff, STARSTONE NATIONAL INSURANCE COMPANY hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:  October 31, 2022          LARSON, GARRICK & LIGHTFOOT, LLP


By:  ____/ s / Arnold D. Larson_____
ARNOLD D. LARSON
Attorneys for Plaintiff,
STARSTONE NATIONAL INSURANCE COMPANY